ZANNIE GARNER, PLAINTIFF v. RENTENBACH CONSTRUCTORS INCORPORATED, DEFENDANT AND THIRD-PARTY PLAINTIFF v. ALLIED CLINICAL LABORATORIES, THIRD-PARTY DEFENDANT

No. 255PA98

(Filed 25 June 1999)

## Employer and Employee— wrongful discharge—drug testing— failure to utilize laboratory

The trial court properly granted summary judgment for defendant in a wrongful discharge action arising from a failed drug test where plaintiff alleged that the discharge was wrongful because the test was not performed by an approved laboratory pursuant to N.C.G.S. § 95-232. While N.C.G.S. § 95-230 is an expression of the public policy of North Carolina, the public policy exception to the employment-at-will doctrine is not automatically triggered because defendant violated the statute by failing to use an approved laboratory. Such conduct may subject an employer to liability under the civil penalties provisions of the statute, but plaintiff in this case failed to forecast any evidence that at the time of the testing defendant knew or suspected that the laboratory did not qualify as an approved laboratory and failed to forecast any evidence suggesting that plaintiff's discharge was for an unlawful reason or a purpose that contravenes public policy. Under the doctrine of employment-at-will, an employer may certainly terminate an employee for suspected drug use as part of an effort to maintain a drug free workplace.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 129 N.C. App. 624, 501 S.E.2d 83 (1998), reversing an order entered by McHugh, J., on 27 February 1997 in Superior Court, Guilford County, on a claim of wrongful discharge, and remanding for trial. Heard in the Supreme Court 8 March 1999.

*Mark Floyd Reynolds II for plaintiff-appellee.*

*Carruthers & Roth, P.A., by Kenneth R. Keller, for defendant-and third-party plaintiff-appellant.*

*Ogletree, Deakins, Nash, Smoak & Stewart, P.C., by Guy F. Driver, Jr., Barbara R. Lentz, and C. Matthew Keen, for third-party defendant-appellant.*

GARNER v. RENTENBACH CONSTRUCTORS, INC.

[350 N.C. 567 (1999)]

FRYE, Justice.

The issue in this case is whether the termination of plaintiff's employment based on a positive reading of a drug test constitutes a wrongful discharge because the drug test was not performed consistently with a state statute. We conclude that, on the facts of this case, it does not.

Plaintiff, Zannie Garner, was hired by defendant, Rentenbach Constructors Inc., as a carpenter on 30 June 1993. The parties do not dispute that plaintiff was an at-will employee. In June 1994, defendant implemented a substance-abuse policy requiring employees to submit to random drug testing. Plaintiff received a copy of defendant's "Drug-Free Workplace Policy" and acknowledged its requirements in writing. On 26 July 1994, plaintiff was asked to give a urine sample for screening, and he agreed to do so. Third-party defendant, Allied Clinical Laboratories (Allied), performed the testing of plaintiff's urine specimen at its Chattanooga, Tennessee, laboratory. The urine sample attributed to plaintiff tested positive for the presence of cannabinoids (marijuana), and the results were reported to defendant by Allied. On 8 August 1994, plaintiff's employment was terminated. Plaintiff denies having used illegal drugs.

Plaintiff filed this action on 7 August 1995 alleging, inter alia, that his discharge from employment based on positive drug-screening results was wrongful because defendant violated N.C.G.S. § 95-232 by failing to have the testing performed by an "approved laboratory," as defined by N.C.G.S. § 95-231(1). Defendant filed an answer denying any wrongdoing and asserting a third-party complaint against Allied. Defendant contends that it relied on Allied's assurances that it was qualified and equipped to perform forensic urine drug testing and on Allied's report concerning the presence of cannabinoids in plaintiff's urine sample. Allied filed an answer denying liability.

In January 1997, defendant and Allied filed separate motions for summary judgment. Among the evidence considered by the trial court in ruling on the summary judgment motions were excerpts from a transcript of proceedings in plaintiff's unemployment benefits claim held before the Employment Security Commission on 31 October 1994. Uncontroverted evidence indicated that at the time plaintiff's urine sample was tested, Allied's Chattanooga laboratory had a general laboratory accreditation from the College of American Pathologists, which included general screening toxicology, but it was not accredited for forensic urine drug testing. Nor was the laboratory

**GARNER v. RENTENBACH CONSTRUCTORS, INC.**

[350 N.C. 567 (1999)]

certified by the United States Department of Health and Human Services, National Institute on Drug Abuse (NIDA), for forensic urine drug testing. The trial court also considered an affidavit of Wayne Amann, safety director for defendant, in which he stated that prior to using Allied to perform drug testing, he inquired and was assured by Allied that it was qualified and equipped to perform drug testing of Rentenbach employees and that its laboratories were " 'NIDA' certified."

The trial court granted defendant's motion for summary judgment, dismissing plaintiff's claim of wrongful discharge.[1] Allied's motion for summary judgment was denied. Plaintiff appealed. The Court of Appeals reversed the trial court's grant of summary judgment and remanded for trial. Discretionary review was allowed by this Court on 8 October 1998.

Recently, in *Kurtzman v. Applied Analytical Indus.*, 347 N.C. 329, 493 S.E.2d 420 (1997), this Court reaffirmed the well-established principle that North Carolina is an employment-at-will state.

> This Court has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party. There are limited exceptions. First, . . . parties can remove the at-will presumption by specifying a definite period of employment contractually. Second, federal and state statutes have created exceptions prohibiting employers from discharging employees based on impermissible considerations such as the employee's age, race, sex, religion, national origin, or disability, or in retaliation for filing certain claims against the employer. Finally, this Court has recognized a public-policy exception to the employment-at-will rule.

*Id.* at 331, 493 S.E.2d at 422 (citations omitted).

Our Court of Appeals first recognized a public-policy exception to the employment-at-will doctrine in *Sides v. Duke Univ.*, 74 N.C. App. 331, 328 S.E.2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E.2d 490 (1985). The plaintiff in *Sides* was a nurse who alleged that she was discharged in retaliation for her refusal to commit perjury in a

---

1. Plaintiff voluntarily dismissed a claim of defamation and abandoned a claim of intentional infliction of emotional distress by failing to address it in his brief before the Court of Appeals. The claim of wrongful discharge is the only one before this Court.

medical malpractice case against her employer. The Court of Appeals recognized the compelling public interest at stake and held that "notwithstanding that an employment is at will, [no employer] has the right to discharge an employee and deprive him of his livelihood without civil liability because he refuses to testify untruthfully or incompletely in a court case." *Id.* at 342, 328 S.E.2d at 826.

This Court adopted a public-policy exception to employment at will in *Coman v. Thomas Mfg. Co.*, 325 N.C. 172, 381 S.E.2d 445 (1989). In *Coman,* the plaintiff, a long-distance truck driver, alleged that his employer required him to drive in excess of the hours allowed by federal Department of Transportation regulations and ordered him to falsify his logs to show compliance with the regulations. The plaintiff refused to do so, and his pay was reduced by fifty percent, which amounted to a constructive discharge. The defendant's conduct violated not only the federal regulations, but also the public policy of North Carolina because the federal regulations had been adopted in the state administrative code and because "[a]ctions committed against the safety of the traveling public" are contrary to the established public policy of the State. *Id.* at 176, 381 S.E.2d at 447. This Court held that the plaintiff stated a cause of action for wrongful discharge, expressly adopting the following language from *Sides*:

"[W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent."

*Id.* at 175, 381 S.E.2d at 447 (quoting *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826).

Three years later, in *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 416 S.E.2d 166 (1992), we were presented with a case in which three employees were told to work for reduced pay, below the statutory minimum wage, or they would be fired. Recognizing that payment of the minimum wage is the public policy of North Carolina, we held that the defendant-employer violated the public policy by firing the plaintiff-employees for refusing to work for less than the statutory minimum wage.

Plaintiff in this case contends that the statutory requirement that employee drug testing be performed by an approved laboratory is an

GARNER v. RENTENBACH CONSTRUCTORS, INC.

[350 N.C. 567 (1999)]

express declaration of policy by the General Assembly and that any employee drug testing performed inconsistently with the Controlled Substance Examination Regulation, N.C.G.S. ch. 95, art. 20 (1993 & Supp. 1998), violates public policy.

By enacting the Controlled Substance Examination Regulation, "[t]he General Assembly finds that individuals should be protected from unreliable and inadequate examinations and screening for controlled substances. The purpose of this Article is to establish procedural and other requirements for the administration of controlled substance examinations." N.C.G.S. § 95-230 (1993). Under North Carolina law, an employer or prospective employer "who requests or requires an examinee to submit to a controlled substance examination shall comply with the procedural requirements" of the Controlled Substance Examination Regulation. N.C.G.S. § 95-232(a) (Supp. 1998). Among the procedural requirements in effect at the relevant time for this case was that an employer or prospective employer "shall use only approved laboratories for screening and confirmation of samples." N.C.G.S. § 95-232(c) (1993) (amended effective 6 July 1995). An "approved laboratory" is "a clinical chemistry laboratory which performs controlled substances testing and which has demonstrated satisfactory performance in the forensic urine drug testing programs of the United States Department of Health and Human Services or the College of American Pathologists for the type of tests and controlled substances being evaluated." N.C.G.S. § 95-231(1) (1993).

We agree that N.C.G.S. § 95-230 is an expression of the public policy of North Carolina. However, we do not agree with plaintiff that because defendant violated N.C.G.S. § 95-232 by failing to use an approved laboratory, the public policy exception to the employment-at-will doctrine is automatically triggered, giving rise to a claim for wrongful discharge.

Under the rationale of *Sides*, *Coman*, and *Amos*, something more than a mere statutory violation is required to sustain a claim of wrongful discharge under the public-policy exception. An employer wrongfully discharges an at-will employee if the termination is done for "an *unlawful reason* or *purpose* that contravenes public policy." *Sides*, 74 N.C. App. at 342, 328 S.E.2d at 826 (emphasis added); *see also Amos*, 331 N.C. at 351, 416 S.E.2d at 168; *Coman*, 325 N.C. at 175, 381 S.E.2d at 447. As stated in *Amos*, the public-policy exception was "designed to vindicate the rights of employees fired *for reasons* offensive to the public policy of this State." *Amos*, 331 N.C. at 356, 416

S.E.2d at 171 (emphasis added). This language contemplates a degree of intent or wilfulness on the part of the employer. In order to support a claim for wrongful discharge of an at-will employee, the termination itself must be motivated by an unlawful reason or purpose that is against public policy.

This case comes to us from the Court of Appeals' reversal of the trial court's grant of summary judgment in favor of defendant. "The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Branks v. Kern*, 320 N.C. 621, 623, 359 S.E.2d 780, 782 (1987). "All inferences are to be drawn against the moving party and in favor of the opposing party." *Id.* at 624, 359 S.E.2d at 782. Likewise, on appellate review of an order for summary judgment, the evidence is considered in the light most favorable to the nonmoving party. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 650, 407 S.E.2d 178, 181 (1991).

The forecast of evidence in the instant case, when viewed in the light most favorable to plaintiff as the nonmoving party, shows that defendant violated the Controlled Substance Examination Regulation by failing to utilize an approved laboratory to conduct plaintiff's drug testing. Such conduct may indeed subject an employer to liability under the civil penalty provisions of the Controlled Substance Examination Regulation. *See* N.C.G.S. § 95-234 (1993). However, plaintiff in this case has failed to forecast any evidence that at the time of plaintiff's testing defendant knew, or even suspected, that Allied's laboratory in Chattanooga did not qualify as an approved laboratory under N.C.G.S. § 95-231(1). Plaintiff also has not forecast any evidence suggesting that his discharge was for an unlawful reason or for a purpose that contravenes public policy. In this case, defendant's allegedly unlawful conduct was the failure to comply with a regulatory statute governing employee drug-testing procedures. In contrast, defendant's *reason* for terminating plaintiff's employment was permissible. Under the doctrine of employment at will, an employer who may fire an employee for any reason or no reason at all may certainly terminate an employee for suspected drug use as part of an effort to maintain a drug-free workplace.

We do not condone defendant's failure to comply with the Controlled Substance Examination Regulation. Nor do we suggest that employers may take lightly the mandate and purpose of the law as set forth in N.C.G.S. § 95-230. However, on the evidence in the

record in this case, plaintiff fails to sustain his claim for wrongful discharge upon defendant's motion for summary judgment. Accordingly, we hold that the Court of Appeals erred by reversing the trial court's grant of summary judgment in favor of defendant.

REVERSED.